**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Gelab Cosmetics LLC,<br><br>Plaintiff,<br><br>-v-<br><br>AB GEL INC,<br><br>Defendant. | 2:25-cv-3080 (NJC) (ST) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On June 3, 2025, Plaintiff Gelab Cosmetics LLC ("GeLab") commenced this action against AB GEL INC ("AB Gel"), bringing the following claims: (1) trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin under Section 45 of the Lanham Act, 15 U.S.C. § 1125; (3) a violation of New York General Business Law § 349 ("Section 349"); and (4) unfair competition under New York common law. (*See* Compl. at 8–11.)

The Clerk of Court entered a certificate of default against AB Gel on September 3, 2025. (ECF No. 14.) Thereafter, on September 30, 2025, GeLab moved for default judgment, seeking $100,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2), and the following proposed permanent injunction:

> (3) Defendant, its manufacturers, retailers, distributors and resellers, its officers, agents, subsidiaries, servants, partners, employees, attorneys, investors, consultants and all others in active concert or participation with them, are permanently enjoined from:
>
> > (a) making any use of Plaintiff's U.S. Trademark Registration No. 6,328,967, U.S. Trademark Registration 6,328,966 and U.S. Trademark Registration 5,164,691

(collectively as "Beetles Trademarks"), or any designation of origin confusingly similar thereto, including offering to sell, selling, distributing, or importing into the U.S. products confusingly similar thereto;

(b) manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Infringing Products or any products confusingly similar thereto;

(c) engaging in any other activity constituting unfair competition with Plaintiff, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Plaintiff; and

(d) committing any other act which falsely represents or which has the effect of falsely representing that Defendant's Infringing Products are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiff.

(4) Defendant and any third party with actual notice of this Order who is providing services for the Defendant or in connection with the Defendant's including without limitation, any online marketplace platforms such as Temu, Amazon, PayPal, and others (collectively, "Third Party Providers"), shall within seven (7) calendar days of receipt of this Order:

(a) cease using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account being used to sell or distribute counterfeit or infringing goods using the Beetles Trademarks; and

(b) cease operating and/or hosting websites or marketplace accounts that are involved in the advertising, offering for sale, or sale of products bearing the Beetles Trademarks or any reproductions or counterfeit imitations thereof that are not genuine Plaintiff products.

(5) Upon Plaintiff's request, those with notice of this Order, including Third party Providers as defined above, shall within seven (7) calendar days of receipt of such notice, disable and cease displaying any advertisements associated with Defendant in connection with the sale of counterfeit goods bearing the Beetles Trademarks.

. . .

(7) Any Third Party Providers holding funds for Defendant, including but not limited to Temu, Amazon, PayPal, and Alipay, shall, within seven (7) calendar days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defendant from transferring or disposing of any funds (up to the total amount of the statutory damages

award) or other assets.

(8) All monies (up to the amount of the statutory damages award) currently in Defendant's financial accounts, including monies held by Third Party Providers are hereby released to Plaintiff as partial payment of the damages. Third Party Providers are ordered to release to Plaintiff the amounts from such accounts within fourteen (14) calendar days of receipt of this Order.

(9) Until Plaintiff has recovered full payment of monies owed by the Defendant, Plaintiff shall have ongoing authority to commence supplemental proceedings under Federal Rule of Civil Procedure 69.

(Proposed Order, Mot. Default J. ("Motion for Default"), ECF No. 15-6 at 2–3.)[1] On October 1, 2026, I referred the Motion for Default to Magistrate Judge Steven Tiscione for a written report and recommendation. (Elec. Order, Oct. 1, 2025.)

On June 22, 2026, Judge Tiscione issued a Report and Recommendation (the "R&R"), recommending that "the District Court grant Plaintiff's motion for default judgment" and award GeLab "$100,000 in statutory damages and injunctive relief barring [AB Gels] from selling counterfeit products." (R&R at 14.) A copy of the R&R was provided to GeLab's counsel via ECF on June 22, 2026. (ECF No. 16.) GeLab filed a certificate of service on June 24, 2026, which affirms that GeLab served AB Gel with a copy of the R&R via email on June 24, 2026. (ECF No. 17.)[2]

---

[1] The description of the injunctive relief sought in the Proposed Order matches the enumeration of paragraphs set forth in the Proposed Order itself. (*See* ECF No. 15-6.)

[2] Earlier in this litigation, Judge Tiscione granted GeLab's motion for leave to serve AB Gels through alternative means after discovering that AB Gels is registered with the New York Department of State, Division on Corporations at an address that does not exist. (*See* ECF Nos. 10, 11.) After holding a hearing on GeLab's motion, Judge Tiscione ordered it to serve AB Gels by email at the email addresses identified on AB Gels' business cards and by serving the New York Secretary of State. ECF No. 11; s*ee Quantum Mango, LLC v. Individuals, Corps., Ltd. Liab. Cos., Partnerships, & Unincorporated Assocs. Identified on Schedule A*, No. 25-cv-7732,

The R&R instructed that any objections to its findings must be filed within fourteen (14) days of service of the R&R. (R&R at 14.) Consequently, the deadline for objections was July 8, 2026. *See* Fed. R. Civ. P. 72(b)(2) (requiring a party to file objections to a magistrate judge's report and recommendation within 14 days of service). The date for filing objections to the R&R has thus expired, and AB Gels has not filed an objection to the R&R.

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016).[3] Because no party has timely filed objections to the R&R, I may review the R&R for clear error. *Id*. Nevertheless, I reviewed the R&R de novo out of an abundance of caution.

Having reviewed the motion papers, the applicable law, and the R&R, I adopt the R&R's recommendation to grant GeLab's Motion for Default Judgment and to award it the recommended statutory damages. However, while GeLab is entitled to some injunctive relief for the reasons set forth in the R&R (*see* R&R at 12–14), the language in its proposed order is too broad and requires modification in several respects.

---

2025 WL 3215649, at *3 (S.D.N.Y. Nov. 18, 2025) (permitting plaintiff to serve defendants via email because such service "is reasonably calculated to apprise Defendants with actual notice" in light of their status as "e-commerce merchants . . . who are particularly adept at hiding their identities and locations and operate almost exclusively online").

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

## I. Enjoining Third Parties

GeLab seeks injunctive relief that would bind third parties that are not presently before the Court. Specifically, paragraphs 4, 5, 7, and 8 of the Proposed Order seek to enjoin third parties from: (1) using, linking to, transferring, selling, exercising control over, or otherwise owning AB Gel's online marketplace accounts (Proposed Order at ¶ 4(a)), and operating and/or hosting websites or marketplace accounts involved in the advertising, offering for sale, or sale of counterfeit GeLab products (*id*. at ¶ 4(b)); (2) displaying any advertisements associated with AB Gel in connection with the sale of GeLab's products bearing the Beetles trademarks (*id*. at ¶ 5); and holding funds in accounts for AB Gel and allowing such funds to be transferred or disposed (*id*. at ¶ 7). GeLab also seeks an injunction ordering third parties to release any AB Gel funds held by those parties to GeLab within fourteen calendar days of issuance of the injunctive relief, as a partial payment of damages. (*Id*. at ¶ 8.)

In similar default judgment cases concerning Lanham Act violations, copyright infringement, or trademark counterfeiting, federal courts have routinely held that they lack the "authority to enjoin persons who are not a party to the litigation and 'over whom [the court] has not acquired in personam jurisdiction.'" *Mattel, Inc. v. www.fisher-price.online*, No. 21-cv-9608, 2022 WL 2801022, at *13 (S.D.N.Y. July 18, 2022) (quoting 11A Wright & Miller, Federal Practice and Procedure § 2956 (3d ed. 2020)); *see also Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 380 (S.D.N.Y. 2020) ("The Court lacks authority to, and will not, enjoin third parties, including financial institutions and third party service providers, who are not before the Court."), *adhered to in part on reconsideration*, No. 18-cv-1774, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020); *Allstar Mktg. Grp. LLC v. 66LinMeiCheng66*, No. 19-cv-4209, 2020 WL

3578094, at *2 (S.D.N.Y. July 1, 2020) (same). In fact, "holding a nonparty in contempt for engaging in enjoined conduct might be considered as a possible denial of due process." *Spin Master Ltd.*, 463 F. Supp. 3d at 380.

Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") carves out a narrow exception to the general principle that courts cannot enjoin parties that are not before them. Under Rule 65(d)(2), an order granting an injunction binds only "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "*other persons* who are in *active concert or participation*" with the parties or the parties' officers, agents, servants, employees, and attorneys, if they have actual notice of the injunction. *See* Fed. R. Civ. P. 65 (emphasis added). "Active concert or participation exists if the third party aided and abetted the party subject to the injunction, which requires showing that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree." *Spin Master Ltd.*, 463 F. Supp. 3d at 380; *cf. Allstar Mktg. Grp. LLC*, 2020 WL 3578094, at *2 ("The Court might still grant the injunctive relief sought pursuant to Rule 65(d) if Plaintiff demonstrated that any . . . Third Party Service Providers were in active concert and participation with the Defaulting Defendants."); *Bidi Vapor, LLC v. Aldfactory*, No. 20-cv-10408, 2022 WL 2237403, at *4 (S.D.N.Y. June 22, 2022) (amending an injunction that seeks to bind third parties to only those who are in "active concert" with the party subject to the injunction). Accordingly, an injunction may only bind third parties not presently before the court if those third parties have actual notice of the injunction and they are either "acting in active concert or participation" with or "acting under the direction of" the party subject to the injunction. *See Mattel, Inc.*, 2022 WL 2801022, at *13 (limiting injunctive relief to

those "acting in active concert with or under the direction of Defendant" to the definition of third-party service providers of financial institutions in the proposed injunction).[4]

Here, GeLab's Proposed Order is overbroad because it seeks a permanent injunction that binds third parties without a requisite showing that those third parties are aiding and abetting any prohibited conduct by engaging in active concert or participation with AB Gels or by acting under its direction. (*See* Proposed Order at ¶¶ 4–5, 7.) Indeed, the Court "cannot prejudge now—before knowing the facts—whether any particular . . . third party service provider is necessarily and by definition an aider and abettor" and accordingly enjoin its conduct. *Spin Master Ltd.*, 463 F. Supp. 3d at 381. While the Court understands "the difficulty of policing counterfeiting operations, and the potentially salutary effect of a judicial order that completely terminates any future commercial operations of a counterfeiter as a sanction for its behavior, an overbroad injunction is not a proportionate remedy to the acts at issue here." *Bidi Vapor, LLC*, 2022 WL 2237403, at *4.

Accordingly, the Court modifies paragraphs 4 and 5 of the Proposed Order by limiting its scope only to "any third parties with actual notice of this Order who are providing services for the Defendant or in connection with the Defendant and are acting in active concert with or under the direction of" AB Gel. The Court would similarly modify the reference to "Third Party Providers" in paragraphs 7 and 8, however, because these paragraphs are struck from the proposed injunction for the reasons explained below, such modification is unnecessary.

[4] An entity or person acting "under the direction of" AB Gels is necessarily acting "in active concert or participation with" it and therefore falls within the narrow exception set forth in Rule 65 to the general principle that courts cannot enjoin parties that are not before them.

## II. Freezing and Releasing AB Gel Assets

GeLab seeks an order freezing funds "up to the total amount of the statutory damages award" or assets held in AB Gel's financial accounts, including those held by third party marketplace providers such as Temu, Amazon, Paypal, and Alipay, and releasing such funds or assets to GeLab within fourteen days of the issuance of an injunction as partial payment of damages awarded through this litigation. (Proposed Order at ¶¶ 7–8.)

Rule 69, Fed. R. Civ. P., governs the enforcement of money judgments in federal court. Under Rule 69(a), "[a] money judgment is enforced by a writ of execution," and the "procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). The Lanham Act, under which GeLab brings its claims, does not provide for a mechanism to enforce money judgments. Therefore N.Y. C.P.L.R. §§ 5222 and 5225 ("Section 5222" and "Section 5225") supply the procedures that the parties must follow. *See Ideavillage Prods. Corp. v. Liuzhou Weimao Mobile Accessory Co.*, No. 20-cv-4997, 2021 WL 3621788, at *7 (S.D.N.Y. Aug. 16, 2021) (finding that Sections 5222 and 5225 provide the procedures to enforce monetary judgments under the Lanham Act). Under Section 5222, a judgment creditor may serve a restraining notice on a person in possession or custody of property in which the judgment creditor has an interest. N.Y. C.P.L.R. § 5222(a). Under Section 5225, the judgment creditor may commence a "special proceeding" or file a Rule 69(a) motion against "a person in possession or custody of money or other personal property in which the judgment debtor has an interest," which may ultimately result in the third party paying a judgment creditor from funds it holds on behalf of the judgment debtor. N.Y. C.P.L.R. § 5222(a); *see also Ideavillage Prods. Corp.*, 2021 WL 3621788, at *7

(detailing proceedings under Section 5222 and Section 5225 to enforce money judgments awarded by order of default judgment for claims under the Lanham Act); *see also N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (holding that "parties can bring a motion under Fed. R. Civ. P. 69(a), rather than instituting a special proceeding under the New York state law") (collecting cases).

Together, Section 5222 and Section 5225 "require that notice and an opportunity to be heard be given to third parties in possession of, or who may be entitled to, those assets before transfer." *Spin Master Ltd.*, 463 F. Supp. 3d at 384; *see also Ideavillage Prods. Corp.*, 2021 WL 3621788, at *7 ("[T]he special proceeding requirement imposed by N.Y. C.P.L.R section 5225 exists to ensure that third parties are given notice and an opportunity to be heard before a court orders turnover of a judgment debtor's assets.").

Paragraphs 7 and 8 of the Proposed Order sidesteps the requirements of Rule 69 and Sections 5222 and 5225, thereby denying notice and an opportunity to be heard to third parties with interests in the potential funds identified in the Proposed Order. Thus, "Plaintiffs' proposed relief . . . would give Plaintiffs rights superior to those of other creditors that Congress did not intend them to have" because, under the terms of proposed paragraphs 7 and 8, "a financial institution holding an asset of" AB Gel "would have to transfer that asset to [GeLab] upon the mere request of [GeLab] . . . even if another third party had a superior claim to that asset" and even "without providing prior notice." *Spin Master* at 384.

To be sure, the Proposed Order states that "[u]ntil Plaintiff has recovered full payment of monies owed by the Defendant, Plaintiff shall have ongoing authority to commence supplemental proceedings under Federal Rule of Civil Procedure 69." (Proposed Order at ¶ 9.)

However, as it stands, GeLab may commence proceedings under Section 5222 and Section 5225 or file a Rule 69 motion in order to enforce a monetary judgment against AB Gels. Nevertheless, proposed paragraphs 7 and 8 are overbroad because they would immediately freeze AB Gel's funds up to the total amount of the statutory damages award as well as assets held by third-party financial institutions *and* require transfer of these funds and assets to GeLab without requiring GeLab to pursue enforcement through proceedings under Section 5222, Section 5225, or Rule 69. For all of these reasons, the Court declines to provide the injunctive relief sought in paragraphs 7 and 8 of the Proposed Order because, to the extent GeLab seeks to "enforce a money judgment, [it] *must* do so in accordance with the procedures set forth by New York law, specifically C.P.L.R. Article 52." *Spin Master* at 385.

**III. Describing the Enjoined Conduct in Reasonable Detail**

The Proposed Order also fails to comply with the requirements of Rule 65 because it incorporates terms by reference that are defined in the Complaint rather than defining the terms in the Proposed Order itself.

Rule 65(d) requires that every injunction "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. Civ. R. P. 65(d) ("Rule 65(d)"). "To comply with the specificity and clarity requirements" of Rule 65(d), "an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Fed. Trade Comm'n v. Shkreli*, No. 22-728, 2024 WL 1026010, at *3 (2d Cir. Jan. 23, 2024), *cert. denied*, 145 S. Ct. 171 (2024). The rule "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed." *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997). A preliminary injunction order that

makes reference to terms in an external document, including a complaint, is "expressly prohibited by rule 65(d)[.]" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 146 (2d Cir. 2011); *see also Eyewonder, Inc. v. Abraham*, 293 F. App'x 818, 820 (2d Cir. 2008) (holding that "the specificity provisions of Rule 65(d) are no mere technical requirements" and compliance with the rule "is essential").

Here, the paragraph 3 of the Proposed Order refers to the "Infringing Products" without defining this term. The term is defined in the Complaint as any products that AB Gel is:

> selling and/or offering for sale . . . in connection with 'Beetles Gel Polish' trademark, which is covered by U.S. Trademark Registration No. 6,328,967, beetles design mark, which is covered by U.S. Trademark Registration 6,328,966, and the "beetles Gel Polish" trademark, which is covered by U.S. Trademark Registration 5,164,691 (collectively as "Beetles Trademarks").

(Compl. ¶ 1.) However, Rule 65 expressly prohibits the issuance of an injunction that requires the parties to refer to the Complaint to understand the terms of the injunction. Accordingly, the Court will include this language into the express terms of the injunction ordered as relief in this action.

## IV. Conclusion

GeLab's Motion for Default Judgment is granted. GeLab is awarded $100,000 in statutory damages for violations of the Lanham Act for the violations against all three trademarks at issue. (*See* R&R at 9–12.) Further, the Court issues the following permanent injunction[5]:

---

[5] Note that in this permanent injunction, the Court does not adopt the paragraph numbering set forth in GeLab's Proposed Order.

**PERMANENT INJUNCTION**

It is hereby ORDERED that the term “Infringing Products” as used in this Order shall refer to any products that AB GEL INC is selling and/or offering for sale in connection with “Beetles Gel Polish” trademark, which is covered by U.S. Trademark Registration No. 6,328,967, beetles design mark, which is covered by U.S. Trademark Registration 6,328,966, and the “beetles Gel Polish” trademark, which is covered by U.S. Trademark Registration 5,164,691 (collectively as “Beetles Trademarks”).

It is further ORDERED THAT:

(1) AB GEL INC, its manufacturers, retailers, distributors and resellers, its officers, agents, subsidiaries, servants, partners, employees, attorneys, investors, consultants and all others in active concert or participation with them, are permanently enjoined from:

(a) making any use of Gelab Cosmetics LLC’s Beetles Trademarks or any designation of origin confusingly similar thereto, including by offering to sell, selling, distributing, or importing into the U.S. any similar confusing products;

(b) manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Infringing Products or any similar confusing products;

(c) engaging in any other activity constituting unfair competition with Gelab Cosmetics LLC, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Plaintiff; and

(d) committing any other act that falsely represents or that has the effect of falsely representing that AB GEL INC’s Infringing Products are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Gelab Cosmetics LLC.

(2) AB GEL INC and any third party with actual notice of this Order who is acting in active concert with, or under the direction of, AB GEL INC and is providing services for AB GEL INC, or in connection with AB GEL INC, including without limitation, any online marketplace platforms such as Temu, Amazon, PayPal, and others (collectively, “Third Party Providers”), shall within seven (7) calendar days of receipt of this Order:

(a) cease using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account being used to sell or distribute counterfeit or infringing goods using the Beetles Trademarks; and

(b) cease operating and/or hosting websites or marketplace accounts that are involved in the advertising, offering for sale, or sale of products bearing the Beetles Trademarks or any reproductions or counterfeit imitations thereof that are not genuine Plaintiff products.

(3) Upon Plaintiff's request, those with notice of this Order acting in active concert with or under the direction of the AB GEL INC, including Third party Providers as defined above, shall within seven (7) calendar days of receipt of such notice, disable and cease displaying any advertisements associated with AB GEL INC in connection with the sale of counterfeit goods bearing the Beetles Trademarks.

Dated: Central Islip, New York
August 27, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GELAB COSMETICS LLC,

Plaintiff,

-against-

AB GEL INC,

Defendant.

**REPORT AND RECOMMENDATION**
2:25-CV-3080-NJC-ST

**TISCIONE, United States Magistrate Judge:**

GeLab Cosmetics LLC ("Plaintiff") sells nail products under registered trademarks. AB GEL INC ("Defendant") is alleged to be using at least one of these trademarks to sell counterfeit products. Plaintiff filed suit on June 3, 2025, alleging trademark infringement and counterfeiting, false designation of origin, violation of New York General Business Law § 349, and unfair competition. Defendant has failed to respond and is in default. Plaintiff seeks default judgment. Plaintiff has demonstrated its trademarks are entitled to protection, and Defendant infringed on such protections. Plaintiff is entitled to damages and injunctive relief barring Defendant from counterfeiting. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND[1]

### I. Parties

Plaintiff is a New Jersey corporation that sells beauty products, including nail polish and remover. Compl. ¶¶ 2. Defendant is a New York company. *Id.* ¶ 6.

[1] This Court takes the following factual allegations from Plaintiff's Complaint ("Compl." ECF No. 1) as well as documents integral to the filing and upon which the filings rely. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## II. Factual Allegations

Plaintiff is the owner of multiple trademarks, namely, Beetles Gel Polish, beetles Gel Polish, and beetles design mark. *Id.* ¶ 1. All three trademarks are covered under valid registrations and are not abandoned. *Id.* ¶¶ 14, 16.

Plaintiff attributes its success to the "brand's rigorous quality standards and innovative designs" rendering their products globally recognizable and identifiable. *Id.* ¶ 12. Plaintiff expended substantial resources growing the brand, and permits their products to be sold only through authorized retail channels. *Id.* ¶¶ 17–18

As a result of this achievement, Plaintiff has been subject to extensive counterfeiting. *Id.* ¶ 19. Among these counterfeiters is Defendant. Plaintiff asserts this occurred online and at the Premier Orlando show, a leading beauty industry event. *Id.* ¶¶ 20–21. Defendant uses Plaintiff's trademarks to "deceive consumers into believing it is an authorized online retailer, outlet store, or wholesaler offering genuine Beetles Products[.]" *Id.* ¶ 21. Plaintiff has neither licensed the trademark, nor authorized Defendant to sell Plaintiff's products. *Id.* ¶ 23.

## III. Procedural History

Plaintiff filed its Complaint on June 3, 2025. *See* Compl. Pursuant to this Court's July 7, 2025 order, Defendant was served the Summons and Complaint on July 14, 2025, via email, and to the New York Secretary of State. *See* Ex. B Proof of Service, ECF No. 15. Defendant failed to answer or otherwise respond. *See* Clerk's Entry of Default, ECF No. 14. Accordingly, on September 3, 2025, the Clerk entered default. *See id.* Plaintiff now moves for default judgment. *See* Default Judgment Motion, ECF No. 15

## **LEGAL STANDARD**

Obtaining a default judgment is a two-step process. *See* Fed. R. Civ. P. 55. Step one is to obtain an entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id*. Here, Defendant is in default. *See* Clerk's Entry of Default.

Step two is to seek default judgment. *See* Fed. R. Civ. P. 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the Clerk must, "on the plaintiff's request, with an affidavit showing the amount due . . . enter judgment for that amount and costs against a defendant[.]" Fed. R. Civ. P. 55(b)(1). "In all other cases," a party must move for a default judgment before the court. Fed. R. Civ. P. 55(b)(2). Before this Court is the latter.

When a plaintiff moves for default judgment, the court must accept the complaint's well-pleaded factual allegations as true. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.").

Then, the court must determine whether the facts establish Defendant's liability as a matter of law. *Mickalis Pawn Shop*, 645 F.3d at 137. After all, "liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010).

After determining liability, the court decides whether, and how much, to award in damages. *Finkel*, 577 F.3d at 83 n.6 ("a default is not an admission of damages"). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*

*Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To show entitlement to damages, the movant must demonstrate that the "compensation sought relates to the damages that naturally flow from the injuries pleaded." *Morales v. B&M Gen. Renovation Inc.*, 2016 WL 1266624, at *2 (E.D.N.Y Mar. 9, 2016) (citations omitted), report and recommendation adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). The court can determine damages without an evidentiary hearing if "sufficiently detailed affidavits and documentary evidence" support the request for damages. *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016).

## JURISDICTION

### I. Subject Matter Jurisdiction

Before granting default judgment, "a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021). Here, this Court has federal question jurisdiction. *See* 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 133. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the New York claims because they derive from the same operative facts as the federal claims. 28 U.S.C. § 1367; *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).

### II. Personal Jurisdiction

Before granting a motion for default judgment, a court may assure itself that it has personal jurisdiction over the defendant. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Here, personal jurisdiction is proper because Defendant is a New York corporation. Compl. ¶ 6.

**III. Local Rules**

A party seeking default judgment must also comply with this Court's local rules. *See* Loc. Civ. R. 55.2. A movant must file an affidavit illustrating: (1) default has been entered by the Clerk; (2) the movant has complied with the Servicemembers Civil Relief Act (not applicable as Defendant is a corporation); and (3) the defendant is not known to be a minor or an incompetent person (again, not applicable). Loc. Civ. R. 55.2(a)(1)(A)-(C). Moreover, if the plaintiff is proceeding by motion, it must provide a memorandum of law consistent with Local Rule 7.1. Loc. Civ. R. 55.2(a)(2). Plaintiff must also file a sworn statement of damages, affirmed by a someone with personal knowledge, detailing the proposed damages and providing a basis for such. Loc. Civ. R. 55.2(c). Lastly, a plaintiff must also certify that all documents have been served upon the defendant. Loc. Civ. R. 55.2(a)(3).

A review of the docket reveals Plaintiff has complied with this Court's local rules and all documents have been served upon Defendant. *See* Ex. B Proof of Service, ECF No. 15.

## DISCUSSION

**I. Liability**

**a. Trademark Infringement and False Designation of Origin**

Section 32 of the Lanham Act establishes liability against a defendant who, without the registrant's consent, "use[s] in commerce any reproduction [or] counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . with which such use is likely to cause confusion" or who affixes these counterfeit reproductions to "advertisements intended to be used in commerce[.]" 15 U.S.C. § 1114(1)(a – b). Similarly, Section 43(a) assigns liability to a defendant who "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause

confusion . . . as to the origin, sponsorship or approval of his goods[.]" 15 U.S.C. §1125(a)(1)(A). In accordance with these statutory similarities, claims brought under sections 1114(1) and 1125(a)(1)(A) are analyzed under the same two-prong framework. *See Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003).

*i. Protectability*

First, Plaintiff's mark must be protectable. *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp*., 991 F.2d 1072, 1075 (2d Cir. 1993). As a general rule, "registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *see also Frank Brunckhorst Co. v. G. Heileman Brewing Co.*, 875 F. Supp. 966, 975 (E.D.N.Y. 1994) (stating the "existence of a trademark registration is *prima facie* evidence of a valid trademark.").

Here, Plaintiff's trademarks are registered, and "valid, subsisting and in full force and effect", and are therefore protectable. Compl. ¶ 1.

***ii. Likelihood of Confusion***

Second, to successfully raise claims of trademark infringement and false designations of origin, Plaintiff must also prove Defendant's use is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). The likelihood of confusion must amount to "a probability of confusion, not a mere possibility." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001). In determining the likelihood of confusion, courts consult the list of non-exhaustive list factors detailed in *Polaroid Corp. v. Polarad Electronics Corp.*. 287 F.2d 492, 495 (2d Cir. 1961). These factors include:

> the strength of the senior user's mark; the similarity of the parties' marks; the proximity of the parties' areas of commerce; the

> likelihood that the senior user will bridge the gap separating their areas of activity; the existence of actual consumer confusion; whether the junior user acted in bad faith or was otherwise reprehensible in adopting the mark; the quality of the junior user's product; and the sophistication of the relevant consumer group.

*Guthrie,* 826 F.3d at 37; *Polaroid Corp.*, 287 F.2d at 495. No single factor is dispositive, and evaluation "is not a mechanical process where the party with the greatest number of factors weighing in its factor wins. Rather, courts focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (quoting *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir.1993)).

In cases involving counterfeit goods, courts "need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Roku Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule a Hereto*, 2025 WL 1626416, at *6 (S.D.N.Y. Mar. 31, 2025), report and recommendation adopted, 2025 WL 1550899 (S.D.N.Y. June 2, 2025) (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (citing to *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) which states, "[w]here the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors.")). Statutorily, "counterfeit" is defined as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark" *Roku Inc.*, 2025 WL 1626416, at *6 (quoting 15 U.S.C. § 1127).

The instant matter is one involving counterfeit goods, so we need not apply the *Polaroid* factors. Defendant is selling a duplicate of Plaintiff's registered trademark number 6,328,966 in commerce. Ex.1, ECF No.1-1; Compl. ¶ 20. Plaintiff has demonstrated Defendant used a replicated

logo at the Premier Orlando Show, in the same industry. Ex.1, ECF No.1-1; Compl. ¶ 20. Accordingly, a consumer is likely to be confused as to the origin of goods, and would believe they were Plaintiff's.

As such, Plaintiff has established trademark infringement, and false designation of origin claims against Defendants in Counts I and II.

**b. New York Common Law Unfair Competition**

"[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.' " *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (quoting *Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249–50 (S.D.N.Y. 1990). Overall, proof of a defendant's liability on a Lanham Act claim is sufficient to establish liability for a New York common law unfair competition claim. *Juul Labs, Inc. v. EZ Deli Grocery Corp I*, 2022 WL 1085406, at *6 (E.D.N.Y. Feb. 10, 2022), report and recommendation adopted, 2022 WL 819152 (E.D.N.Y. Mar. 18, 2022). To prove unfair competition, a plaintiff must establish either actual confusion by consumers, or the likelihood of confusion. *Jeffrey Milstein, Inc*. 58 F.3d at 34 (citing to *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir.1993)). Additionally, a plaintiff must demonstrate bad faith. *Id*. (citing to *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980)). A determination of bad faith considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (quoting *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)).

Here, Plaintiff has met their burden. As previously discussed, Plaintiff has proven Defendant's liability under the Lanham Act, and resultingly established liability for New York Common Law Unfair Competition. Plaintiff has established a likelihood of consumer confusion. Further, Plaintiff has demonstrated Defendant's bad faith. Though it is impossible to ascertain Defendant's intentions due to its unresponsiveness, we may surmise their exact duplication of Plaintiff's well-known mark, within the same industry, was done to capitalize off Plaintiff's reputation and deceive consumers. Compl. ¶ 44.

Accordingly, Plaintiff has established New York Common Law Unfair Competition against the Defendants in Count IV.

## II. Damages

Since liability has been established, this Court must now ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc.*, 183 F.3d at 155. To prove damages, the movant need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, " 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.' " *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 619 (S.D.N.Y. 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997).

Under the Lanham Act, Plaintiff may seek statutory damages in cases involving counterfeit marks. 15 U.S.C. § 1117(c). "The Act provides that in cases where a party uses a counterfeit mark in connection with the 'sale, offering for sale, or distribution of goods or services,' the plaintiff can receive statutory damages of between $1,000 and $200,000 per counterfeit mark per type of good."

*Michael Kors, L.L.C. v. Mid Ctr. Equities Assocs., L.L.C.*, 2017 WL 4277191, at *2 (S.D.N.Y. Sept. 25, 2017) (citing 15 U.S.C. § 1117(c)). If use of the mark was willful, a maximum of $2,000,000 per counterfeit mark, per type of good, may be awarded. *Id.*, 15 U.S.C. § 1117(c)(2). Willful infringement "may be established by a party's default because an innocent party would presumably have made an effort to defend itself." *Chloe v. Zarafshan,* 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009).

"The court has broad discretion in determining the amount of damages within the statutory range." *Michael Kors, L.L.C.*, 2017 WL 4277191, at *2 (quoting *GMA Accessories, Inc. v. Solnicki*, 2011 WL 4790615, at *1 (S.D.N.Y. May 23, 2011)). All that is required by the Act is that the court award damages that are "just." *Id*. (citing 15 U.S.C. § 1117(c)(2)).

In making this determination, courts often consult cases interpreting the Copyright Act, which similarly awards damages for willful copyright infringement. *All-Star Mktg. Grp., LLC*, 775 F. Supp. at 622. Accordingly, the following factors are often considered:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id*.

In instances where plaintiffs fail to provide information as to a defendant's profits and losses, courts issue damages well below the statutory maximum. *Michael Kors, L.L.C.*, 2017 WL 4277191, at *3.

Here, Plaintiff seeks only statutory damages under the Lanham Act. Statutory damages are appropriate, as the lack of information in the record is due to Defendant's inactivity on the case. "Congress enacted the statutory damages remedy in trademark counterfeiting cases because

evidence of a counterfeiter's profits is almost impossible to ascertain since 'records are frequently nonexistent, inadequate, or deceptively kept.' " *Juul Labs, Inc.*, 2022 WL 1085406 at *6 (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y.), *amended in part,* 328 F. Supp. 2d 439 (S.D.N.Y. 2004)); *see also Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

Due to its default status, Defendant is deemed a willful infringer. Accordingly, Plaintiff could be entitled to $2,000,000 per counterfeit mark, per type of good. Here however, Plaintiff requests $100,000 total – well below the statutory maximum.

Those Copyright factors that can be determined from the record weigh in Plaintiff's favor. The first two factors are impossible to determine, because Defendant has failed to provide its profit information, rendering Plaintiff unaware as to expenses saved and revenue lost. As to the third factor, Plaintiff has demonstrated the high value of its trademark. Plaintiff's brand is recognized worldwide, and identifiable in the beauty industry. Compl. ¶ 12. As such, "we infer from the well-known reputations of most or all of the trademarks . . . that they are indeed valuable." *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999).

Finally, this Court finds Plaintiff's request of $100,000 an appropriate deterrent for Defendant and others. Indeed, courts have awarded far higher penalties against willful infringers on default judgment. *See Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, 2008 WL 4449533 (S.D.N.Y. Oct. 2, 2008) (awarding $200,000 per mark for a total of $1 million); *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2007 WL 3287368 (S.D.N.Y. Nov. 7, 2007) (awarding $250,000 per mark for a total of $500,000); *Roller Rabbit LLC. v. Yiulangde Clothing Store*, 2026 WL 710079 (S.D.N.Y. Mar. 13, 2026) (awarding $150,000 per mark); *Brand Advance, LLC v. Brand*

*Advance UK*, 2026 WL 443990 (E.D.N.Y. Jan. 27, 2026) (awarding $3,000,000). An award of $100,0000 is an appropriate deterrent here.

**III. Injunction**

A plaintiff seeking injunctive relief on a motion for default judgment must first show that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (citation omitted). Court's also "balance [of] hardships between the plaintiff and defendant" and the consider if the "public interest would be [] disserved by a permeant injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The first prong is satisfied here. The applicable statute, 15 U.S.C. § 1116(a), vests district courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable[.]" As such, Plaintiff is entitled to injunctive relief under the applicable statute.

The second prong is also satisfied. To satisfy the second prong, the moving party must show "(1) actual success on the merits and (2) irreparable harm." *Gucci*, 286 F. Supp. 2d at 290. Additionally, a plaintiff must demonstrate an absence of an adequate remedy at law. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975). Plaintiff has demonstrated actual success on the merits, by virtue of Defendant's default. *See CommScope, Inc. of N.* Carolina, 809 F. Supp. 2d at 41 ("Defendant's default constitutes an admission of liability. As a result, Plaintiff has established success on the merits.").

Next, to demonstrate irreparable harm, "a party seeking injunctive relief ordinarily 'must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages.' " *La Barbera v. Les Sub-Surface*

*Plumbing, Inc.*, 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008) (citing *NAACP v. Town of E. Haven*, 70 F.3d 219, 224). In trademark cases, "irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.1987) (citation and quotation mark omitted). As explained *supra*, this Court finds the average purchaser is likely to be confused as to the source of these goods. As such, Plaintiff is currently suffering from "irreparable harm to its reputation and the goodwill of the Beetles Trademarks." Compl. ¶ 30; *See Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985) ("[I]rreparable injury[ ] exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark" because loss of control over one's "[r]eputation is not calculable nor precisely compensable.") Further, this injury is not only likely and imminent, but it is ongoing. *See* Compl. ¶ ¶ 20-22 (showing Defendant is selling goods in person and online).

Moreover, there is an absence of adequate remedy at law, as Plaintiff cannot be made whole by money damages. "A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue its infringement." *Ghost L.L.C. v. Ghost Fitness NYC, LLC,* 2025 WL 2487826, at *14 (E.D.N.Y. Aug. 29, 2025) (quoting *Karmagreen, LLC v. Super Chill CBD Prods.*, 2024 WL 1348783, at *8 (S.D.N.Y. Mar. 29, 2024)). Being that Defendant has not bothered to respond, this Court has no assurances it will cease its blatantly unlawful actions without the issuance of an injunction.

In balancing the hardships between the Parties, Plaintiff prevails. As a result of this injunction, Defendant's only requirement will be to cease any further illegal activity, halting the sale of goods that both deceives consumers, and profits off the work product of others. *See Stark*

*Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp 2d 145, 163–64 (E.D.N.Y 2013); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)).

Finally, public interest would not be disserved by this Court's injunction. "[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Plaintiff has not granted Defendant permission, licensing or authorization to use these trademarks. Compl. ¶¶ 23. Truthfully, "Plaintiff has no control over the quality and materials used in the [c]ounterfeit [g]oods[.]" *Juul Labs, Inc.* 2022 WL 1085406, at *10. Accordingly, the goods Defendant is attaching the Beetles trademarks to are of unknown origin and quality, and harm the public's best interest.

## CONCLUSION

This Court respectfully recommends the District Court grant the Plaintiff's motion for default judgment. Plaintiff is entitled to $100,000 in statutory damages and injunctive relief barring Defendant from selling counterfeit products.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d

Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also* *Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
June 18, 2026